## RIDDLE *v.* FELLOWS.

The execution upon which an equity of redemption in real estate has been sold, must, with the officer's return thereon, be recorded in the county where said real estate is situated, on or before the return day of the execution.

If this is not done, the title will not pass by such sale, except as against the debtor and his heirs, until such record is made.

Since the Revised Statutes, the deed of the officer to the purchaser of an equity of redemption in real estate, though recorded, does not have the effect of giving legal notice of the conveyance.

IN EQUITY. The bill alleges that the plaintiff, on the 17th day of March, 1859, purchased of Jeremiah S. Durgin, a deputy sheriff of the county of Merrimack, all the right in equity which one Hiram Gage, of Boscawen, in said county, had on the third day of April, 1854, of redeeming two certain tracts of land in said Boscawen, giving the particular boundaries and description of each; that on said 17th day of March, 1859, said Durgin duly made, executed, and delivered to the plaintiff a deed of said premises, which was recorded March 19, 1859; that on said third day of April, 1854, one Abraham Bean held a mortgage upon said real estate, which said mortgage was, on said 17th day of March, 1859, held by said Bean, and the debt thereby secured was then due to him; that a suit was commenced by said Bean to forclose said mortgage, and on the second day of June, 1859, a writ of possession was issued upon the conditional judgment rendered on said mortgage, and said Bean took possession of said premises; that soon after this the plaintiff was informed that the said mortgage had been assigned to this defendant; that on the 29th day of May, 1860, the plaintiff applied to the defendant to know the amount due on said mortgage debt, and the amount of rents and profits re-

ceived, to which the defendant replied that he had received no rents or profits, but that there was due to him on said mortgage the sum of $495.15; that the plaintiff then tendered to the defendant the sum of $500, in gold, in full payment and discharge of said mortgage, but that said Fellows refused to accept the whole or any part thereof; that the plaintiff is, and at all times since the date of his said deed, has been ready to pay the amount equitably due upon said mortgage to said Fellows, or to any one else owning the same. The plaintiff also says that said Fellows, and those under whom he claims to hold, have received rents and profits therefrom since the second day of June, 1859.

The plaintiff prays that the defendant may be ordered and decreed to account for the rents and profits, and also upon the bringing into court, by the plaintiff, of the amount equitably due upon said mortgage debt, after deducting the rents and profits, to discharge said mortgage, or to assign the same to the plaintiff, as the court may order, and for further relief.

The defendant, in his answer, says that on the fifth day of July, 1859, Hiram Gage, for a valuable and sufficient consideration, gave this defendant his promissory note for $300, on demand, &c., and, at the same time, conveyed to this defendant in mortgage, to secure the payment of said note, the premises described in the plaintiff's bill, subject to certain mortgages thereof, then existing and specified in said deed to this defendant, to wit, one to Abraham Bean, one to Moses Fellows, one to Phebe B. Burns, and one to Gage, Porter & Co., and all given by said Hiram Gage; that the defendant's said deed was duly recorded July 9, 1859; that at the time the defendent received his deed, and when the same was recorded, the said Hiram Gage was in possession and occupation of said premises, claiming to be the owner thereof, subject to the mortgages above mentioned, and that the defendant had no knowl-

edge or notice of any title or interest in the same in any other person than said Gage, except the mortgages to the persons aforesaid; that the said mortgages from said Gage to said Fellows, Burns, and Gage, Porter & Co., were duly executed and acknowledged the 28th day of February, 1859, and recorded March 1, 1859; that subsequent to the execution and delivery of said mortgage deed to him, this defendant paid to the several persons owning the claims secured by the mortgages aforesaid to Bean, Fellows, Burns, and Gage, Porter & Co., the several amounts due them on said claims, and took due transfers and assignments of the claims to himself; and that he has ever since held and still holds the same.

The defendant admits that on or about the time specified in the plaintiff's bill, the plaintiff made him a tender of $500, on account of the claim secured by the Bean mortgage, then held by this defendant, and that he declined to receive the same; but says he so declined because he was then holding and owning the claims secured by the mortgages to Fellows, Burns, and Gage, Porter & Co., and also the one to himself, which were then all justly due him, and that he was then ready and willing, and offered the plaintiff to receive the amounts justly due on said claims, being $693.97, together with that secured by the mortgage to said Bean; but the plaintiff refused to pay the same, or any part thereof.

The defendant also says that the plaintiff has not, upon his own showing, in his said bill, any title to or interest in his said premises, or any part thereof, and denies the plaintiff's right and title altogether, and prays that the plaintiff may be held to prove his title, if he has any in the premises, and denies that he, or those under whom he claims, have ever received any profits or income from said premises in any way, but says that the same have been and still are in the actual occupation of said Hiram Gage.

The case was submitted upon the bill, answer and proofs. The evidence showed that the mortgage given by Hiram Gage to said Bean was dated in 1849; that Gage's equity of redemption was attached by Durgin, on the writ, April 3, 1854; that this equity was sold on execution to the plaintiff, February 25, 1859, but the deed of the equity was dated March 17, and recorded in Merrimack county, where the real estate was located, March 19, 1859. The mortgages from said Gage to Gage, Porter & Co., Burns and Moses Fellows, were dated February 28, and recorded March 1, 1859, and the mortgage from said Gage to the defendant was dated July 5, and was recorded July 9, 1859. The execution on which the equity was sold was issued November term, 1858, court of common pleas for Hillsborough county, and was returnable at the term to be held on the third Tuesday (the nineteenth day) of April, 1859. The execution and the officer's return were recorded in the registry of deeds for Hillsborough county, March 28, 1859, and filed in the clerk's office of said county, April 2, 1859, and the same were recorded in Merrimack county, August 16, 1859.

*Morrison & Stanley*, for the plaintiff.

*Minot & Mugridge*, for the defendant.

SARGENT, J. The question raised here is whether the plaintiff is entitled to hold the premises, by paying the first or Bean mortgage, the one which was given before the purchase of the equity of redemption by himself; or whether the subsequent mortgages which the defendant now holds are good against the plaintiff's title, and must be paid by him before he can perfect that title to the premises; and this question depends entirely upon the provisions of the statute, and the construction which they shall receive.

Riddle *v.* Fellows.

When the law was first passed, authorizing equities of redemption to be attached and sold (in 1822, N. H. Laws of 1830, 105), the statute, beside providing how the land should be attached, and how the equity might be sold, and the form of the deed that should be given by the sheriff to the purchaser, and how the right thus sold should be redeemed and released, contained this provision : " All deeds made and executed in pursuance of the provisions of this act, shall be as effectual, to all intents and purposes, to convey the debtor's right in equity aforesaid to the purchaser, his heirs and assigns, as if such deed had been executed by such debtor or debtors."

This left the purchaser of the equity with a deed of his title, which he might get recorded or not, as he pleased, and he would stand upon that as he would upon a deed from the debtor of the same right. If his deed was recorded, that would be notice in law to all others ; if not recorded, he must run his risk of attachments or other conveyances ; and thus the law remained till the Revised Statutes. In the revision, although the deed from the officer is required substantially the same as before, yet the provision that this deed shall convey all the debtor's right, &c., was repealed, and a new section was added as follows : " No sale upon execution of any greater interest in any real estate than a term of seven years shall be valid, except against the debtor and his heirs, unless the execution and the return shall be recorded in the registry of deeds in the county in which the estate is situated." Rev. Stat., ch. 196, sec. 8.

There can be no doubt that the equity of redemption in real estate is an interest greater than a term for seven years, yet no time is specified in this section when the execution and return are to be recorded, in order to make the sale of the equity effectual ; but section first of the same chapter provides that executions upon which equities of redemption have been sold, with the doings of the officer

thereon, "shall be returned according to the precept thereof." Now it must have been intended, we think, that the record which section eight requires of this execution and return, should be made before the return day of the execution, when the officer is expressly required to return both to the clerk of the court to go upon the files. This would be analogous, also, to the requirement in regard to the recording of executions and officers' returns thereon, in case of a set-off of real estate. Rev. Stat., ch. 195, sec. 12; Comp. Laws 501.

And we are of opinion, from all the aforesaid provisions in regard to the recording and returning of executions and returns on which equities of redemption have been sold, that it was the intention of the legislature that the rule should be the same in cases of equities of redemption as with levies on real estate, as expressed in section 12 of chapter 195 of the Revised Statutes: "All the debtor's interest in such real estate shall pass by the levy as against all persons whatever, if the levy is recorded as aforesaid, on or before the return day of the execution; otherwise, only as against the debtor and his heirs, until such record is made."

Had the execution and return in this case been recorded in Merrimack county at the time it was in Hillsborough (probably by mistake), then the sale would have been good and valid, even against the mortgages which had been made and recorded after such sale of the equity, and before such record of the execution and return; but the execution and return, not being thus recorded in the county where the real estate was situated on or before the return day of the execution, this purchaser's title fails, as against those mortgages which had been recorded at any time after the sale and before the execution and return were thus recorded; and whether those mortgages were recorded before or after the return day of the execution is not material.

Riddle *v.* Fellows.

The recording of the officer's deed of the equity under this statute is of no consequence. It is not the record which the law requires, and is, therefore, no notice to any one. And, in fact, under the old law, when the recording of this officer's deed must have been taken to be legal notice to every body of the transfer of the property, yet it gave very little actual notice to any body of the facts they would wish to know; and this was undoubtedly the reason why the statute was changed in this respect at the time of the revision. The deed, when sent to the registry, was of course entered on the index, in the name of the officer, as grantor, to the purchaser, as grantee. The name of the debtor whose land had been conveyed did not appear; and suppose a man was desirous of purchasing a farm in this county, if he would be sure that the equity had not been sold to some one, he must first ascertain the names of the sheriff and all his deputies, and examine all the deeds they had all given to any persons, else the single one that he should thus fail to examine might contain the conveyance of the land in question. But when the execution and the officer's return are recorded, the names appearing on the index at the registry are the names of the debtor and creditor in the execution; and, by that means, any person, having occasion to examine the records, will be guided by the index in the right direction, and will get the same notice that he would from a deed from the debtor to the creditor, which he would not do from the officer's deed of the premises.

As the record here shows the execution and return in this case were not recorded in the county where the land lay within the time required by law, nor until after all the mortgages specified in the defendant's answer were made and recorded, the plaintiff can not perfect his title without paying the amount due upon them all.

The bill must, therefore, be

*Dismissed with costs.*